United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUEL KIMBLE,<br><br>        Plaintiff,<br><br>    v.<br><br>RHODES COLLEGE, INC., *et al.*,<br><br>        Defendants.<br>_____/ | No. C-10-5786 EMC<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO COMPEL ARBITRATION**<br><br>**(Docket No. 12)** |

        Plaintiff Jacquel Kimble has filed a class action against Defendants Rhodes College, Inc.; Rhodes Business Group, Inc.; and Corinthian Colleges, Inc., asserting that Defendants made numerous misrepresentations to her to induce her to enroll at Everest College. Ms. Kimble has asserted claims for violation of the California Business & Professions Code § 17200 and violation of the California Consumers Legal Remedies Act. Currently pending before the Court is Defendants' motion to compel arbitration. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and the parties' supplemental filings, the Court hereby **GRANTS** Defendants' motion. The Court further stays proceedings in this case pending arbitration.

## I.   DISCUSSION

        The parties agree that, at or about the time Ms. Kimble enrolled at Everest College, she signed two documents: an "Application/Enrollment Agreement" and an "Enrollment Agreement Addendum & Disclosures." *See* Suter Decl., Exs. A-B (agreements). The parties further agree that the two documents contain arbitration provisions. The first document provides in relevant part as follows:

> By my signature, I acknowledge that I understand that both I and The School are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court. . . . I also acknowledge that I may, at any time, before or after my admission, obtain a copy of the Rules of the American Arbitration Association ["AAA"], at no cost, from The School President.

*Id.*, Ex. A (Agreement at 3). The second document provides in relevant part that "[b]oth I and the School irrevocably agree that any dispute between us shall be submitted to Arbitration" and that "I agree that any dispute arising from my enrollment, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association . . . under its Consumer Rules." *Id.*, Ex. B (Addendum at 4-5). Ms. Kimble specifically initialed these provisions (as well as others).

The parties disagree whether the above provisions require the instant case to be submitted to arbitration. The parties further disagree as to a predicate issue – *i.e.*, whether the issue of arbitrability should be decided by this Court or by an arbitrator.

The predicate issue, of course, must be addressed first. In examining the issue, the Court cannot "assume that the parties agreed to arbitrate arbitrability [*i.e.*, that the issue of arbitrability should be decided by an arbitrator] unless there is clea[r] and unmistakabl[e] evidence that they did so." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777 n.1 (2010) (internal quotation marks omitted); *see also AT&T Techologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986) (stating that, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by court, not the arbitrator"). This elevated standard of proof obtains because typically the issue of arbitrability is decided by the courts, and the Federal Arbitration Act does not contemplate otherwise. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (stating that, if "the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it woudl decide any other queston that the aprties did not submit to arbitration"); *see also Kirby Morgan Dive Sys. v. Hydrospace Ltd.*, No. CV 09-4934 PSG (FFMx), 2010 U.S. Dist. LEXIS 9657, at *9 (C.D. Cal. Jan. 13, 2010) (noting that, "[d]espite the FAA's general deference toward

2

1  arbitration, issues of arbitrability are generally reserved for the courts"). Thus, the starting
2  presumption is that arbitrability is an issue for the court to decide.

3  The Supreme Court has explained that the "'clear and unmistakable' requirement . . . pertains
4  to the parties' *manifestation of intent . . . .*" *Rent-A-Center*, 130 S. Ct. at 2777 n.1 (emphasis in
5  original). Often courts have looked at the language of the arbitration agreement to see whether the
6  parties manifested an intent to arbitrate arbitrability. *See, e.g.*, *International Ass'n of Machinists &*
7  *Aero. Workers v. AK Steel Corp.*, 615 F.3d 706, 712 (6th Cir. 2010) (noting that "[t]he Transition
8  Agreement does not provide, in 'clear and unmistakable' language, for an arbitrator to decide
9  substantive arbitrability"); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005)
10 (stating that "[a] shifting of the issue to the arbitrator will only be found where there is 'clear and
11 unmistakable evidence' of such an intent in the arbitration agreement"); *Shaw Group, Inc. v.*
12 *Triplefine Int'l Corp.*, 322 F.3d 115, 125 (2d Cir. 2003) ("conclud[ing] that the agreement clearly
13 and unmistakably evidences the parties' intent to arbitrate questions of arbitrability"); *McLaughlin*
14 *Gormley King Co. v. Terminix Int'l Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997) (noting that
15 "neither the arbitration clause nor any other provision in the 1984 contract between Terminix and
16 MGK clearly and unmistakably evidenced the parties' intent to give the arbitrator power to
17 determine arbitrability"). In the instant case, the parties have – consistent with these cases – focused
18 on the language of the agreements signed by the parties.

19 In this case, the Addendum signed by Ms. Kimble provides that "[b]oth I and the School
20 irrevocably agree that *any* dispute between us shall be submitted to Arbitration." Suter Decl., Ex. B
21 (Addendum at 5) (emphasis added). Although this language is arguably broad enough to encompass
22 the issue of arbitrability, given the presumption against arbitration of arbitrability, it alone is not
23 sufficiently explicit to satisfy the clear and unmistakable evidence test prescribed by the Supreme
24 Court.

25 Defendants point out, however, that the Addendum also contains the following provision: "I
26 agree that any dispute arising from my enrollment, no matter how described, pleaded or styled, shall
27 be resolved by binding arbitration under the Federal Arbitration Act conducted by the American
28 Arbitration Association [AAA] . . . *under its Consumer Rules.*" *Id.*, Ex. B (Addendum at 4)

(emphasis added). And, as Defendants note, a number of courts have held that there is a clear and unmistakable expression of intent to arbitrate arbitrability where the arbitration provision incorporates by reference a set of arbitration rules that includes a rule that the arbitrator will decide the issue of arbitrability. For instance, in *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329 (2d Cir. 2010), the Second Circuit expressly held that, when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id.* at 345; *see also Clarium Capital Mgmt. LLC v. Choudhury*, No. C 08-5157SBA, 2009 U.S. Dist. LEXIS 14805, at *13 (N.D. Cal. Feb. 11, 2009) (stating that, "[w]hen the arbitration agreement explicitly incorporate[s] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator").

Even more tellingly, numerous courts have held that incorporation by reference of rules promulgated by the AAA specifically constitutes a clear and unmistakable expression of intent to arbitrate arbitrability. For example, in *Fallo v. High-Tech Institute*, 559 F.3d 874 (8th Cir. 2009), the arbitration provision at issue incorporated the AAA Commercial Rules, including Rule R-7(a) which gives the arbitrator "'the power to rule on his or her own jurisdiction [including any objections with respect to the existence, scope or validity of the arbitration agreement].'" *Id.* at 878 (quoting Commercial Rule R-7(a)). The Eighth Circuit held that the incorporation "constitute[d] a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." *Id.*; *see also Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding the same); *Visa USA, Inc. v. Maritz, Inc.*, No. C 07-05585 JSW, 2008 U.S. Dist. LEXIS 89124, at *15 (N.D. Cal. Mar. 18, 2008) (holding the same). *See generally Madrigal v. New Cingular Wireless Servs.*, No. 09-CV-00033-OWW-SMS, 2009 U.S. Dist. LEXIS 72416, at *13 (E.D. Cal. Aug. 17, 2009) (noting that "[n]umerous courts have examined the language in Rule 7 and concluded that, when incorporated into an arbitration agreement, it clearly and unmistakable evidences the parties' intent to arbitrate the scope of the arbitration agreement, *i.e.*, to arbitrate whether a claim or claims fall(s) within the scope of the arbitration agreement").

Ms. Kimble argues that these cases are distinguishable. More specifically, she points out that cases such as those cited above have incorporated by reference the AAA *Commercial* Rules, whereas here the parties agreed to incorporate by reference only the AAA *Consumer* Rules, and the Consumer Rules do not have a rule comparable to Commercial Rule R-7(a). The problem for Ms. Kimble is that Consumer Rule C-1(a) provides that "[t]he Commercial Dispute Resolution Procedures *and* these Supplementary Procedures for Consumer-Related Disputes shall apply whenever the American Arbitration Association (AAA) or its rules are used in an agreement between a consumer and a business . . . ." Homer Decl., Ex. E (Consumer Rule C-1(a)) (emphasis added). Therefore, the Consumer Rules expressly incorporate by reference the Commercial Rules, which in turn contains Rule R-7(a).[1]

Ms. Kimble protests that the Consumer Rules cannot incorporate by reference Commercial Rule R-7(a) because Consumer Rule C-1(a) also provides that, "[i]f there is a *difference* between the Commercial Dispute Resolution Procedures and the Supplementary Procedures, the Supplementary Procedures will be used." *Id.* (emphasis added). According to Ms. Kimble, "the 'Consumer Rules' differ from the 'AAA Commercial Rules' in that the Consumer Rules contain no delegation [to the arbitrator] provision whatsoever." Pl.'s 2d Supp. Br. at 4. This argument misses the point. Consumer Rule C-1(a) is directed at a situation where there is a conflict between the Consumer Rules and the Commercial Rules. The fact that the Consumer Rules do not have their own internal rule comparable to Commercial Rule R-7(a) does not create a conflict between the Consumer and Commercial Rules. The stated function of the Consumer Rules is to supplement the Commercial Rules, and it incorporates nearly all its provisions absent a conflict. Commercial Rule R-7(c) does not conflict with any specific provision of the Consumer Rules.

To be sure, some courts have also looked at the parties' conduct as another manifestation of intent. *See, e.g.*, *T. Co Metals*, 592 F.3d at 344 ("conclud[ing] that the parties displayed clear and unmistakable intent to submit the question to the arbitrator [because] [b]oth [parties] made this

---

[1] *Cf. Koffler Elec. Mech. Apparatus Repair, Inc. v. Wärtsilä N. Am., Inc.*, No. C-11-0052 EMC, 2011 U.S. Dist. LEXIS 34851 (N.D. Cal. Mar. 24, 2011) (upholding a double incorporation: where a purchase order incorporated by reference a document titled "General Terms and Conditions" which in turn incorporated by reference AAA rules).

5

intention clear by directly petitioning the arbitrator to amend the Original Award; there is no indication that either party anticipated the ICDR Article 30(1) interpretive question being preserved for consideration by a judicial body"); *Rock-Tenn Co. v. United Paperworkers Int'l Union*, 184 F.3d 330, 335 (4th Cir. 1999) (stating that, "[b]y word and deed, the parties repeatedly demonstrated their intent to allow the arbitrator to decide whether the dispute was arbitrable"); *World Group Secs v. Ko*, No. C-03-5055 MJJ (EDL), 2004 U.S. Dist. LEXIS 15726, at *8-9 (N.D. Cal. Feb. 11, 2004) (indicating that, where a party files a motion for dismissal with the arbitrator, attends the hearing on the issue, and obtains the result before seeking judicial relief, it clearly and unmistakably submits the question of arbitrability to the arbitrator). However, neither party argues that their conduct informs the analysis here. Nor does Ms. Kimble argue that there is other evidence of the parties' intent which contradicts the intent clearly manifested by the contractual language agreed to by the parties herein.

    Accordingly, the Court concludes that, in this case, there is a clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability. The arbitrator, therefore, and not this Court, shall decide whether the arbitration provisions at issue are enforceable.

## II.  **CONCLUSION**

    For the foregoing reasons, the Court grants Defendants' motion to compel arbitration. The issue of arbitrability in this case is one for the arbitrator, and not the Court to decide. The Court further stays proceedings in this case pending the arbitration. *See* 9 U.S.C. § 3 (providing that, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is

///
///
///
///
///
///
///

pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

This order disposes of Docket No. 12.

IT IS SO ORDERED.

Dated: June 2, 2011

_____
EDWARD M. CHEN
United States District Judge